UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NORTHWEST PIPELINE LLC,<br><br>            Plaintiff,<br><br>v.<br><br>ERIC D. SWANSON, et al.,<br><br>           Defendants. | CASE NO. C13-5961 BHS<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff Northwest Pipeline LLC's ("Northwest")[1] motion for summary judgment (Dkt. 14) and Defendants Eric Swanson and Kristina Swanson's ("Swansons") cross-motion for summary judgment (Dkt. 26). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies Northwest's motion and grants in part and denies in part the Swansons' cross-motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On November 4, 2013, Northwest filed suit against the Swansons. Dkt. 1. Northwest alleges that it possesses an easement through a parcel of land owned by the

---

[1] Northwest and its predecessors in interest are collectively referred to as "Northwest" throughout this order.

Swansons in Cowlitz County, Washington ("Property"). *Id.* Northwest seeks declaratory and injunctive relief to clarify its easement rights. *Id.* at 6–8. In the alternative, Northwest seeks to condemn an easement under 15 U.S.C. § 717f(h). *Id.* at 9.

On July 17, 2014, Northwest moved for summary judgment. Dkt. 14. On August 4, 2014, the Swansons responded. Dkt. 18. On August 8, 2014, Northwest replied. Dkt. 23.

On August 28, 2014, the Swansons filed a cross-motion for summary judgment. Dkt. 26. On September 15, 2014, Northwest responded. Dkt. 31. On September 19, 2014, the Swansons replied. Dkt. 33.

## II. FACTUAL BACKGROUND

**A.   Parties**

Northwest is a federally regulated company that operates, maintains, and constructs natural gas pipelines. Dkt. 15, Declaration of Jean Brady ("Brady Dec.") ¶ 4. Northwest operates its pipelines pursuant to a blanket certificate of public convenience and necessity, issued by the Federal Energy Regulatory Commission ("FERC"). Dkt. 16, Declaration of Jessica A. Skelton ("Skelton Dec."), Ex. A. Northwest owns and operates two pipelines that run through the Property. Brady Dec. ¶ 6.

The Swansons currently own the Property. Skelton Dec., Ex. I.

**B.   T&M Permit**

In 1956, the Northwestern Improvement Company ("Improvement Company")— the then-owner of the Property—issued a publicly recorded T&M Permit ("Permit") to Northwest. Skelton Dec., Ex. B.

The Permit granted Northwest the right to "construct, install, maintain, operate, repair, renew and remove a welded steel pipe line for transportation of natural gas in, over and across the [Property]." *Id.* at 2. The Permit also granted Northwest the "right to enter the [Property] for the purpose of exercising its rights" under the Permit. *Id.* at 4.

In consideration for these rights, Northwest agreed to pay "annual rental," which was initially set at $25 per year. *Id.* at 2–3. The Permit provides that

> failure to pay any such annual rental shall not automatically terminate or work a forfeiture of this permit unless [Northwest] shall fail to pay any such annual rental within thirty (30) days following written demand made on [Northwest] by the Improvement Company.

*Id.* at 3.

The Permit also includes a provision concerning the conveyance of an easement. *Id.* at 7. That provision provides as follows:

> 11.   The Improvement Company covenants and agrees that if it shall sell or dispose of the [Property], or any portion thereof, that it will, prior to such sale or alienation, make, execute, deliver and place of records a permanent easement in favor of [Northwest] conveying, without additional cost to [Northwest], the right in perpetuity to construct, install, maintain, operate, repair, renew and remove the pipe line herein described.

*Id.*

If Northwest failed to comply with the terms of the Permit, the Improvement Company had the right to terminate the Permit ninety days after giving written notice. *Id.* at 6.

**C.   Supplemental Agreement**

In 1971, the Improvement Company's successor by merger, Burlington Northern Inc. ("Burlington Northern"), entered into a publicly recorded Supplemental Agreement with Northwest.  Skelton Dec., Ex. C.

The Supplemental Agreement amended and added to the terms of the Permit. *Id.* First, the Supplemental Agreement granted Northwest the right "to construct, install, operate, repair, renew and remove" a second pipeline on the Property. *Id.* at 2. Additionally, the Supplemental Agreement maintained the Permit's annual rent requirement, which increased to $175 per year. *Id.* at 3.

The Supplemental Agreement also amended the Permit's provision regarding the conveyance of an easement. *Id.* at 4.  The amended provision provides as follows:

> 11.   Burlington Northern covenants and agrees that if it shall sell or dispose of all its interest in the [Property], or any portion thereof, occupied by said pipeline, it will, prior to such sale or alienation, make, execute, deliver and place of record a permanent easement, upon payment of the fair value thereof by [Northwest], conveying to [Northwest] the right in perpetuity to construct, install, maintain, operate, repair, renew and remove said pipeline in its then existing location.

*Id.*

Finally, the Supplemental Agreement states that "[e]xcept as herein modified, all terms and conditions of [the Permit] shall be and remain in full force and effect, and this agreement is supplemental to and becomes a part of [the Permit]." *Id.*

**D.   Subsequent Property Conveyances**

From 1971 to 1996, Burlington Northern and its related entities—BN Timberlands, Inc. and Plum Creek Timber Company, LP ("Plum Creek")—owned the

ORDER - 4

Property. Skelton Dec., Exs. D, E.

In 1996, however, Plum Creek sold the Property to Stimson Lumber Company ("Stimson Lumber"), an entity wholly unrelated to Burlington Northern. Skelton Dec., Ex. F. The 1996 deed states that the conveyance is subject to "an Easement from Northwest Improvement Company to [Northwest] dated June 27, 1956 . . . as amended by Supplemental Agreement recorded on August 4, 1971 . . . ." *Id.* at 4.

In 2001, Stimson Lumber transferred the Property to Stimson Washington, Inc. ("Stimson Washington"). Skelton Dec., Ex. G. In 2003, Stimson Washington sold the Property to Weyerhaeuser Corporation ("Weyerhaeuser"). Skelton Dec., Ex. H. The 2003 deed states that the conveyance is subject to an "easement" dated June 27, 1956 in favor of Northwest. *Id.* at 12.

After Burlington Northern sold the Property in 1996, Northwest did not make any rental payments on the Property. Brady Dec. ¶ 6. During this time, Northwest continuously operated and maintained the two pipelines on the Property. *Id.*

**E.     Swansons Purchase the Property**

In 2007, the Swansons purchased the Property from Weyerhaeuser. Skelton Dec., Ex. I. The 2007 deed states the conveyance is subject to "[a]ll matters of public record, to any easement or right of way for any public or private roads, railroads or utilities heretofore existing on said lands." *Id.* at 4. The deed identifies an "easement" dated June 27, 1956 in favor of Northwest. *Id.* According to the deed, the "easement" is for Northwest to "[c]onstruct, install, maintain, operate, repair, renew and remove a welded steel pipeline for transportation of natural gas." *Id.* at 4–5.

In 2012, Northwest requested permission to enter the Property to conduct civil and environmental surveys. Skelton Dec., Ex. L at 2. Through their counsel, the Swansons denied Northwest's request. *Id.* Following a series of discussions, the Swansons declined to execute an easement in favor of Northwest. Skelton Dec., Ex. M at 2.

### III. DISCUSSION

Northwest moves for summary judgment, arguing that it possesses easement rights through the Property. Dkt. 14. The Swansons cross-move for summary judgment, arguing that Northwest does not possess any easement rights. Dkt. 26.

**A.   Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.     Northwest's Motion for Summary Judgment**

Northwest moves for summary judgment, arguing that it already possesses title to an easement through the Property. Dkt. 14 at 10. Alternatively, Northwest argues that it is entitled to condemn an easement through the Property without compensating the Swansons. *Id.* at 13.

**1.     Easement Rights**

Northwest contends that it possesses an easement through the Property on three separate grounds: (1) actual title; (2) equitable title; and (3) eminent domain authority. Dkt. 14 at 10.

ORDER - 7

### a. Actual Title

Northwest first argues that it has actual title to an easement pursuant to the provisions of the Permit and the Supplemental Agreement. *Id.* In response, the Swansons argue that these documents only promise to convey an easement in the future. Dkt. 18 at 11.

Easements are interests in land. *Bakke v. Columbia Valley Lumber Co.*, 49 Wn.2d 165, 170 (1956). As interests in land, express easements "must be conveyed by a deed complying with the statute of frauds." *Gold Creek N. Ltd. P'ship v. Gold Creek Umbrella Ass'n*, 143 Wn. App. 191, 200–01 (2008). A document satisfies the statute of frauds if it "demonstrate[s] a present intent to grant or reserve an easement" and is signed by the party sought to be bound. *Zunino v. Rajewski*, 140 Wn. App. 215, 222–23 (2007). Courts determine "the parties' intent from the language in the instrument purporting to grant the easement." *Gold Creek*, 143 Wn. App. at 201. "No particular words are necessary to create an easement so long as the language shows an intent to grant with terms that are certain and definite." *Rainier View Court Homeowners Ass'n, Inc. v. Zenker*, 157 Wn. App. 710, 720 (2010).

Here, the Permit and Supplement Agreement anticipate a grant of an easement to Northwest. The Permit provides that an easement would be conveyed to Northwest if the Property is sold:

> 11. The Improvement Company covenants and agrees that *if it shall sell or dispose of the* [*Property*], or any portion thereof, that *it will, prior to such sale or alienation, make, execute, deliver and place of records a permanent easement in favor of* [*Northwest*] conveying, without additional

> cost to [Northwest], the right in perpetuity to construct, install, maintain, operate, repair, renew and remove the pipe line herein described.

Skelton Dec., Ex. B at 7 (emphasis added). The Supplemental Agreement amended this provision. *See* Skelton Dec., Ex. C. The amended provision provides that Northwest would need to pay fair value before an easement would be conveyed:

> 11. Burlington Northern covenants and agrees that *if it shall sell or dispose of all its interest in the* [*Property*], or any portion thereof, occupied by said pipeline, *it will, prior to such sale or alienation, make, execute, deliver and place of record a permanent easement, upon payment of the fair value thereof by* [*Northwest*], conveying to [Northwest] the right in perpetuity to construct, install, maintain, operate, repair, renew and remove said pipeline in its then existing location.

*Id.* at 4 (emphasis added).

The Permit and Supplemental Agreement do not grant an easement to Northwest. Neither the Permit nor the Supplemental Agreement contains language that expresses a present intent to grant an easement. *See Zunino*, 140 Wn. App. at 222. Rather, the Permit and Supplemental Agreement contain promises to convey an easement to Northwest in the future after certain conditions are fulfilled. *See Gold Creek*, 143 Wn. App. at 201. The Supplemental Agreement provides that an easement would be conveyed to Northwest if the Property is sold and Northwest pays the fair value of the easement. Skelton Dec., Ex. C at 4. An express easement, however, "must be conveyed by a deed complying with the statute of frauds." *Gold Creek*, 143 Wn. App. at 200–01. "[A] contract to convey property at a future date . . . is not itself a deed." *Kesinger v. Logan*, 113 Wn.2d 320, 327 (1989). In other words, a contract to convey an easement in

1  the future does not actually convey an easement. *Id.* Thus, the Permit and Supplemental

2  Agreement do not convey an easement to Northwest.

3  Although the Permit and Supplemental Agreement conditionally promise to

4  convey an easement in the future, the evidence in the record establishes that the requisite

5  conditions were not fulfilled. Specifically, there is no evidence that Northwest paid fair

6  value for an easement before the Property was sold. There is also no evidence of a

7  publicly recorded deed conveying an easement to Northwest. While the deeds in the

8  Property's chain of title reference an "easement" in favor of Northwest, none of the deeds

9  purports to grant a present interest in the Property to Northwest. *See* Skelton Dec., Exs.

10  F, H, I; *see also Kesinger*, 113 Wn.2d at 327.

11  Thus, this issue is a matter of failure to perform and not, as Northwest argues, a

12  matter of construing the Permit and Supplemental Agreement. *See* Dkt. 23 at 5. Even if

13  the Court construed every ambiguous term in favor of Northwest, the parties never

14  actually performed the obligations under the Permit and Supplemental Agreement of

15  publically recording an easement and satisfying the statute of frauds.

16  Based on the evidence in the record, Northwest does not have actual title to an

17  easement through the Property. The Court denies Northwest's motion on this issue.

18          **b.**    **Equitable Title**

19  Northwest next argues that it has equitable title to an easement through the

20  Property. Dkt. 14 at 10–11. According to Northwest, the Permit and Supplemental

21  Agreement's promise to convey an easement transferred equitable title to an easement to

22

Northwest. *Id.* at 11. In response, the Swansons argue that the Permit and Supplemental Agreement do not convey any interest in the Property to Northwest. Dkt. 18 at 14.

In Washington, a purported deed can be maintained as a contract for a deed that conveys equitable title to property. *See U.S. Fid. & Guar. Co. v. Alloway*, 173 Wn. 404, 406 (1933); *Edson v. Knox*, 8 Wn. 642, 646 (1894). The purported deed, however, must intend to convey title to property. *See, e.g.*, *Edson*, 8 Wn. at 645–46; *see also Kesinger*, 113 Wn.2d at 327. In other words, the purported deed must demonstrate a present intent to grant an easement in order to convey equitable title to an easement. *See Kesinger*, 113 Wn.2d at 327.

In this case, there is no deed or instrument that purports to grant an easement to Northwest. As discussed above, the Permit and Supplemental Agreement only promise to convey an easement to Northwest in the future after certain conditions are fulfilled. Additionally, the deeds in the Property's chain of title do not purport to convey any interest in the Property to Northwest. Northwest does not have equitable title to an easement if no deed or instrument purports to convey title to an easement. *See Kesinger*, 113 Wn.2d at 327.

Northwest notes in its reply brief that equitable title can be transferred "when the recipient has taken full or partial possession of the easement." Dkt. 23 at 6. Northwest, however, did not raise the doctrine of part performance in its motion for summary judgment or its response brief to the Swansons' cross-motion for summary judgment.[2]

---

[2] Northwest also did not make a claim for a prescriptive easement.

As a general rule, a movant may not raise new arguments in its reply brief because it violates the opposing party's due process rights.[3] *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990).

In any event, Northwest has not established that the doctrine of part performance applies in this case. *See Berg v. Ting*, 125 Wn.2d 544, 556 (1995) (identifying three factors to determine if the part performance doctrine applies). Northwest has not supported its assertion with sufficient facts or analysis. Moreover, the facts of this case fall squarely within the law regarding actual contracts to convey an easement at a future date and the failure to do so.

For these reasons, Northwest does not have equitable title to an easement in the Property. The Court denies Northwest's motion on this issue.

### c.   **Eminent Domain**

Northwest also argues that it has title to an easement pursuant to its eminent domain authority under federal law. Dkt. 14 at 12. The Swansons do not dispute Northwest's eminent domain authority. The Swansons, however, argue that Northwest has not yet exercised its eminent domain authority because it installed and maintained the pipelines pursuant to the terms of the Permit and Supplemental Agreement. Dkt. 18 at 14.

---

[3] Northwest is well aware of this rule because Northwest included the rule in its reply brief. Dkt. 23 at 8 n.2.

As the holder of a certificate of public convenience and necessity, Northwest has eminent domain authority under 15 U.S.C. § 717f(h). *See* Skelton Dec., Ex. A; 15 U.S.C. § 717f(h). Section 717f(h) provides:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for transportation of natural gas . . . it may acquire the same by the exercise of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. § 717f(h). In order to exercise its eminent domain authority, however, Northwest must obtain an order of condemnation. *See Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cnty.*, 550 F.3d 770, 776 (9th Cir. 2008).

Although Northwest has eminent domain authority, the evidence in the record establishes that Northwest did not exercise this authority when it installed the two pipelines. Northwest installed the pipelines pursuant to the terms of the Permit and Supplemental Agreement rather than an order of condemnation. Indeed, Northwest concedes that it installed the pipelines based on the agreed terms of the Permit and Supplemental Agreement. Dkt. 23 at 8. Northwest therefore did not condemn an easement through the Property pursuant to its eminent domain authority.

Northwest does not have title to an easement pursuant to its eminent domain authority. The Court denies Northwest's motion on this issue.

**2. Condemnation and Compensation**

Finally, Northwest argues that it is entitled to condemn an easement for its existing pipelines "without further cost or delay." Dkt. 14 at 13. The Swansons argue that

Northwest must pay the Swansons the fair value of any easement condemned through this litigation. Dkt. 18 at 15.

While Northwest has the power to condemn an easement under federal law, Northwest has not yet shown that it meets the requirements for an order of condemnation in this case. To obtain an order of condemnation, Northwest must show: "(1) that it holds a FERC certificate authorizing the relevant project[;] (2) that the land to be taken is necessary to the project; and (3) that the company and the landowners have failed to agree on a price for the taking. . . . [following] good faith negotiations . . . ." *Transwestern Pipeline*, 550 F.3d at 776.

In regards to compensation, "it is a general rule of the law of eminent domain that any award goes to the owner at the time of the taking, and that the right to compensation is not passed to a subsequent purchaser." *Palazzolo v. Rhode Island*, 533 U.S. 606, 628 (2001). The method of condemnation determines the time of the taking. *See United States v. Dow*, 357 U.S. 17, 21 (1958). Generally, property may be condemned in one of two ways: (1) physically seizing property without a court order; or (2) instituting condemnation proceedings under federal law. *Id.* In a physical possession case, the taking occurs when the property is physically seized. *Id.* at 22. Thus, the owner at the time of the seizure has the right to compensation. *Id.*; *Kakeldy v. Columbia & P.S.R. Co.*, 37 Wn. 675, 680–81 (1905). Meanwhile, in a condemnation suit, the taking occurs at the time of trial. *Dow*, 357 U.S. at 21; *Distler v. Grays Harbor & P.S. Ry. Co.*, 76 Wn. 391, 392 (1913). The owner at the time of trial has the right to compensation. *Dow*, 357 U.S. at 21.

1 As discussed above, Northwest installed the pipelines pursuant to the Permit and
2 Supplemental Agreement. Northwest did not seek to condemn an easement through the
3 Property until it filed this lawsuit in 2013. *See* Dkt. 1 at 9. Accordingly, the Swansons—
4 as the current owners of the Property—may have the right to compensation for any
5 easement condemned in this litigation. *See Dow*, 357 U.S. at 21; *Distler*, 76 Wn. at 392.

6 Northwest argues that the Swansons are not entitled to any compensation because
7 they purchased the Property with notice of Northwest's pipeline operations and therefore
8 did not suffer any damages. Dkt. 14 at 14. The Court recognizes the issue raised by
9 Northwest. This issue, however, was not fully briefed or thoroughly discussed by the
10 parties and the Court declines to rule on it in this order. As such, the Court anticipates
11 subsequent dispositive motions from the parties on this issue.

12 In sum, the Court denies Northwest's motion without prejudice to the extent that it
13 seeks judgment on the issues of condemnation and compensation.

14 **C.     Swansons' Cross-Motion for Summary Judgment**

15 The Swansons cross-move for summary judgment, arguing that Northwest does
16 not possess any easement rights in the Property. Dkt. 26. The Swansons argue that
17 Northwest's claims for declaratory and injunctive relief should be dismissed. *Id.* at 3.
18 The Court grants the Swansons' cross-motion on this issue. The Swansons also argue
19 that Northwest must pay the Swansons the fair value of any easement condemned
20 through this litigation. *Id.* For the reasons discussed above, the Court denies the
21 Swansons' cross-motion without prejudice on the issue of compensation.

22

1  D.     **Remaining Issues**

2       In light of this order, Northwest currently does not have any easement rights
3  through the Property.  Northwest, however, may seek an order of condemnation for
4  easement rights pursuant to its eminent domain authority.  *See* 15 U.S.C. § 717f(h).  To
5  obtain an order of condemnation, Northwest must show: "(1) that it holds a FERC
6  certificate authorizing the relevant project[;] (2) that the land to be taken is necessary to
7  the project; and (3) that the company and the landowners have failed to agree on a price
8  for the taking. . . . [following] good faith negotiations . . . ." *Transwestern Pipeline*, 550
9  F.3d at 776.  This inquiry may require additional briefing from the parties.  Further, while
10 the Swansons may have the right to compensation for any easement condemned in this
11 litigation, the amount of compensation they are entitled to, if any, remains to be
12 determined.  Accordingly, the parties should confer and provide the Court with a joint
13 status report on the remaining issues and intentions of the parties by November 14, 2014.

14                                    **IV. ORDER**

15      Therefore, it is hereby **ORDERED** that Northwest's motion for summary
16 judgment (Dkt. 14) is **DENIED** and the Swansons' cross-motion for summary judgment
17 (Dkt. 26) is **GRANTED in part and DENIED in part**.

18      Dated this 29th day of October, 2014.

                                          BENJAMIN H. SETTLE
                                          United States District Judge